# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWN McLAUGHLIN, individually, and as Administrator of the ESTATE OF E.M., a minor, <br><br> STEPHANIE McLAUGHLIN, <br><br> SHAWN McLAUGHLIN, and STEPHANIE McLAUGHLIN as parents and natural guardians of G.M., a minor <br>              PLAINTIFFS, <br>      V. <br><br> AMAZON.COM, INC., <br><br> AMAZON.COM SERVICES, LLC <br><br>        DEFENDANTS. | CIVIL ACTION – LAW <br><br> JURY TRIAL DEMANDED <br><br> NO.: |

## COMPLAINT

AND NOW COME the Plaintiffs, Shawn McLaughlin, individually and as Administrator of the Estate of E.M., a minor, Stephanie McLaughlin, and Shawn McLaughlin and Stephanie McLaughlin as parents as natural guardians of G.M., a minor, by and through their legal counsel, Fellerman & Ciarimboli Law, P.C., to

hereby complain against the Defendants, Amazon.com, Inc. and Amazon.com Services, LLC and in support thereof aver as follows:

## PARTIES

1. Plaintiffs, Shawn McLaughlin and Stephanie McLaughlin, are competent, married adult individuals who reside at 5194 Nuangola Road, Mountain Top, Luzerne County, Pennsylvania 18707.

2. Plaintiffs, Shawn McLaughlin and Stephanie McLaughlin, are the natural parents of E.M., a deceased minor.

3. Plaintiffs, Shawn McLaughlin and Stephanie McLaughlin, are also the natural parents of G.M., a minor Plaintiff.

4. G.M., a minor resides with her mother and father at 5194 Nuangola Road, Mountain Top, Luzerne County, Pennsylvania 18707.

5. E.M. was a minor at the time of her tragic death residing with her mother and father at 5194 Nuangola Road, Mountain Top, Luzerne County, Pennsylvania 18707.

6. Plaintiff, Shawn McLaughlin has been duly appointed as the Administrator of the Estate of E.M. by the Luzerne County Register of Wills.

7. Defendant, Amazon.com, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.

8.    Defendant, Amazon.com Services, LLC is a limited liability company organized under the laws of Delaware with a principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.

9.    Defendants Amazon.com, Inc. and Amazon.com Services, LLC are hereinafter collectively referred to as "Amazon."

10.    Upon information and belief, Amazon is involved in electronic commerce and derives a large portion of its sales through third-party vendors such as YOBEST.

11.    After reasonable investigation, Plaintiffs believe that Xiamen Chaole Yueqi Industry and Trade Co. ("XCY"), Ltd., is upon information and belief a Chinese manufacturer who participated in the design, assembly, manufacture, sale, supply, and/or distribution of the subject Play Pen as set forth fully below.

12.    It is believed and therefore averred that XCY is a Chinese manufacturer of the YOBEST Playpen who has a principal place of business located at No. 666, Grassroots Road, Tong'an District, Xiamen City, Fujian Province, China.

13.    At all relevant times hereto, XCY designed, assembled, manufactured the Play Pen, and Amazon marketed, promoted, sold, supplied, and/or distributed the YOBEST Play Pen line to consumers in North America.

**Amazon is a De Facto Manufacturer of the YOBEST Play Pen**

3

14. Amazon sells products made by its vendors pursuant to a contract between Amazon and the vendors.

**Consumers**

We serve consumers through our online and physical stores and focus on selection, price, and convenience. We design our stores to enable hundreds of millions of unique products to be sold by us and by third parties across dozens of product categories. Customers access our offerings through our websites, mobile apps, Alexa, devices, streaming, and physically visiting our stores. We also manufacture and sell electronic devices, including Kindle, Fire tablet, Fire TV, Echo, Ring, and other devices, and we develop and produce media content. We seek to offer our customers low prices, fast and free delivery, easy-to-use functionality, and timely customer service. In addition, we offer Amazon Prime, a membership program that includes unlimited free shipping on over 100 million items, access to unlimited streaming of tens of thousands of movies and TV episodes, including Amazon Original content, and other benefits.

We fulfill customer orders in a number of ways, including through: North America and International fulfillment and delivery networks that we operate; co-sourced and outsourced arrangements in certain countries; digital delivery; and through our physical stores. We operate customer service centers globally, which are supplemented by co-sourced arrangements. See Item 2 of Part I, "Properties."

15. Amazon entered into a contract agreement, arrangement, and/or business relationship Amazon with XCY to have exclusive rights to manufacture, design, market, sell, supply and distribute the YOBEST Play Pen on the Amazon's online platform.

*Our Commercial Agreements, Strategic Alliances, and Other Business Relationships Expose Us to Risks*

We provide physical, e-commerce, and omnichannel retail and other services to businesses through commercial agreements, strategic alliances, and business relationships. Under these agreements, we provide web services, technology, fulfillment, computing, digital storage, and other services, as well as enable sellers to offer products or services through our stores. These arrangements are complex and require substantial infrastructure capacity, personnel, and other resource commitments, which may limit the amount of business we can service. We may not be able to implement, maintain, and develop the components of these commercial relationships, which may include web services, fulfillment, customer service, inventory management, tax collection, payment processing, hardware, content, and third-party software, and engaging third parties to perform services. The amount of compensation we receive under certain of our commercial agreements is partially dependent on the volume of the other company's sales. Therefore, when the other company's offerings are not successful, the compensation we receive may be lower than expected or the agreement may be terminated. Moreover, we may not be able to enter into additional or alternative commercial relationships and strategic alliances on favorable terms. We also may be subject to claims from businesses to which we provide these services if we are unsuccessful in implementing, maintaining, or developing these services.

16. Amazon has sole control over whether a listing appears on the online Amazon platform and has the exclusive right to refuse any product listing, including the Play Pen.

17. The Play Pen was designed and manufactured exclusively for Amazon.

18. Amazon makes no effort to verify that the vendors are reputable and in good standing, does not verify contact information for the vendors, does not take

4

steps to ensure that vendors are amenable to legal process, and makes no effort to verify that the vendor's products are not defective.

19. Further, Amazon requires all communication with customers regarding products sold, including the Play Pen on its web platform to go directly through Amazon.

20. Amazon collects the revenue from each sale of its products.

21. Amazon maintains warehouses nationally to store and distribute the products that it manufactures and sells on its online platform.

22. Amazon takes sole responsibility for the product; provides replacement or refunds for improper, lost, or damaged shipments; and reimburses the vendor for damage to the product while in Amazon's possession.

23. Returned items are shipped directly back to Amazon at the sole direction of Amazon.

24. Amazon provides express guarantees and warranties for items sold by Amazon of timely delivery and accurate product descriptions as listed on the Amazon web platform.

25. Amazon maintains sole control over whether a product remains on the Amazon platform upon receiving information regarding a product's safety in the form of customer ratings, reviews, and complaints.



26.    Amazon also retains the exclusive right to remove any product listing from its web platform for any reason.

27.    Amazon assigns an Amazon Standard Identification Number ("ASIN") for each product that it markets, promotes, supplies, distributes, and/or sells on its web platform.

28.    By assigning an ASIN and providing warranties to the Play Pen, Amazon had effectively subsumed the Play Pen as its own product.

29.    Through its collective actions and control, Amazon is the de facto manufacturer of the Play Pen.

30.    Moreover, in its Securities Exchange filings, Amazon recognizes that it can be held liable for product liability claims stemming from injuries caused by the products it manufactures and sells on its online platform.

*We Are Subject to Product Liability Claims When People or Property Are Harmed by the Products We Sell or Manufacture*

Some of the products we sell or manufacture expose us to product liability or food safety claims relating to personal injury or illness, death, or environmental or property damage, and can require product recalls or other actions. Third parties who sell products using our services and stores increase our exposure to product liability claims, such as when these sellers do not have sufficient protection from such claims. Although we maintain liability insurance, we cannot be certain that our coverage will be adequate for liabilities actually incurred or that insurance will continue to be available to us on economically reasonable terms, or at all. Although we impose contractual terms on sellers that are intended to prohibit sales of certain type of products, we may not be able to detect, enforce, or collect sufficient damages for breaches of such agreements. In addition, some of our agreements with our vendors and sellers do not indemnify us from product liability.

31.    Therefore, Amazon is liable for the injuries sustained by the Plaintiffs and the tragic death of E.M., a minor.

32.    At all relevant times, Plaintiffs acted with due care and in no way caused or contributed to the tragic incident that forms the basis of this lawsuit.

33.    Plaintiffs' Decedent seeks damages for all harms and losses permissible under Pennsylvania law, including, but not limited to, funeral and burial expenses, costs of estate administration, profound psychological and emotional loss, conscious pain and suffering, and such other injuries, damages, and losses as described more fully and compensable at law under the Wrongful Death Act and Survival Act, and the decisional law of this Commonwealth interpreting those Acts, caused by the negligence and recklessness of Amazon.com, Inc.

## **JURISDICTION AND VENUE**

34.    This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because (a) there is complete diversity of citizenship between Plaintiff and the Defendants; and (b) the matter in controversy exceeds the jurisdictional limit.

35.    Venue is appropriate in this court pursuant to 28 U.S.C. §1391(b)(2) because the incident giving rise to this action occurred in Luzerne County, Pennsylvania.

## OPERATIVE FACTS COMMON TO ALL COUNTS

36.    The preceding paragraphs are incorporated herein by reference as though fully set forth.

37.    In and around March of 2021, Stephanie McLaughlin purchased the YOBEST Baby Playpen ("Play Pen") through the YOBEST marketplace on Amazon.com for her daughter, E.M.

38.    The Play Pen was a gift for E.M.'s upcoming birthday.

39.    The Play Pen was delivered to the McLaughlin residence and assembled by Stephanie McLaughlin.

40.    Instruction manuals were not provided with the Play Pen.

41.    Instead, Ms. McLaughlin was obligated to use instructional videos that were found on the YOBEST store embedded through the Amazon website.

8



42.     These videos did not provide step-by-step directions, but instead simply showed an individual putting together the Play Pen.





43.    Ms. McLaughlin was obligated to play and pause the video numerous times to ensure that she was using the correct pieces in the assembly of the Play Pen.

44.    The Play Pen was set up in the living room for E.M. to utilize during the day while Ms. McLaughlin worked.

45.    Ms. McLaughlin specifically chose to set the Play Pen up in the living room because she had a clear line of sight from her office.

46.    May 19, 2021 began just as any other day did in the McLaughlin home.

47.    Ms. McLaughlin placed E.M. in the Play Pen to play and nap while she logged onto her computer for her workday mere feet from the Play Pen in her office.

48.    Ms. McLaughlin checked on E.M. constantly throughout the morning.

49.     Additionally, G.M. was working on her online schoolwork in the kitchen with clear sight to the Play Pen.

50.     On the above date, at approximately 12:00 p.m., Ms. McLaughlin got up to check on E.M.

51.     Ms. McLaughlin and G.M. found E.M. tragically hanging from the top center joint of the Play Pen unconscious.

52.     Ms. McLaughlin called emergency services and began administering CPR to her child, E.M.

53.     E.M. was rushed to Geisinger Wyoming Valley Hospital and later life flighted to the Children's Hospital of Philadelphia.

54.     E.M. was pronounced dead at 2:59 a.m. on May 20, 2021 as a result of mechanical asphyxia.

55.     At all relevant times hereto, Amazon exhibited a conscious disregard for the health and safety of the consumer by allowing the unsafe and defective Play Pen to be placed in the stream of commerce.

56.     As a result of the Incident, as well as the negligence, carelessness, and recklessness of Amazon, the Estate of E.M., Plaintiff Shawn McLaughlin, and the Decedents' family, have suffered and will continue to suffer substantial economic and non-economic injuries, damages and losses including, but not limited to:

   a.   Funeral and burial expenses;

11

b.  Costs of Estate administration;

c.  Profound psychological and emotional loss;

d.  Conscious pain and suffering;

e.  Loss of the comfort, care, and society of E.M.; and

f.  Such other injuries, damages and losses described more fully herein and compensable at law under the Wrongful Death Act and the Survival Act, and the decisional law of this Commonwealth interpreting those Acts.

57.    At all relevant times hereto, Plaintiffs acted in a safe, prudent and reasonable manner and in no way contributed to the injuries or damages outlined herein.

58.    At all relevant times hereto, G.M. witnessed her sister hanging from the Play Pen and the subsequent administration of CPR by her mother from the kitchen in plain view of the Play Pen.

59.    At all relevant times hereto, Plaintiffs trusted that the Play Pen they had purchased was safe and relied on the product description listed by Amazon.

60.    In the YOBEST Play Pen item description, Amazon purports that the Play Pen passed all SGS Testing.

12



61.     SGS provides professional testing, inspection and certification for safety of products around the world.

62.     Upon information and belief, the SGS Certification that Amazon markets with the YOBEST Play Pen is counterfeit.

63.     Upon information and belief, Amazon knowingly markets, promotes, distributes, supplies and sells the YOBEST Play Pen line with a counterfeit SGS Certification.

64.     Upon information and belief, Amazon knowingly markets, promotes, distributes, supplies and sells the YOBEST Play Pen without a Children's Product Certificate (CPC) certifying that the children's product complies with the applicable children's product safety rules.

65.    At all relevant times, upon information and belief, Amazon knew or should have known that the Play Pen was unsafe, defective and unfit to be placed in the stream of commerce.

66.    Moreover, despite having knowledge of the unsafe and defective Play Pen, Amazon negligently, recklessly and with conscious disregard for the safety of the consumers, including the McLaughlin Family placed the line into the stream of commerce.

67.    At all relevant times hereto, 16 CFR §1221 governs "Safety Standards for Play Yards."

68.    Additionally, 16 CFR §1221 incorporates by reference the standards set forth in ASTM F406-19.

## COUNT I

## WRONGFUL DEATH

## SHAWN MCLAUGHLIN, AS ADMINISTRATOR OF THE ESTATE OF E.M. v. AMAZON.COM, INC. AND AMAZON.COM SERVICES, LLC

69.    The preceding paragraphs are incorporated herein by reference as though fully set forth.

70.    Under the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. §8301 E.M., deceased, left surviving her sole heirs -at-law, her parents who reside at the following addresses:

14

a.   Shawn McLaughlin (father), residing at 5194 Nuangola Road, Mountain Top, Luzerne County, Pennsylvania, 18707; and

b.   Stephanie McLaughlin (mother), residing at 5194 Nuangola Road, Mountain Top, Luzerne County, Pennsylvania 18707.

71.   As a result of the negligent acts and omissions of Defendant, as described more fully herein, Plaintiffs' Decedent, E.M., suffered catastrophic, permanent and fatal injuries and death resulting in the entitlement to damages by the aforementioned beneficiaries under the Wrongful Death Act.

72.   Plaintiff, Shawn McLaughlin, Administrator of the Estate of E.M., deceased, hereby claims the full measure of damages recoverable under any by virtue of the Pennsylvania Wrongful Death Act, 42 Pa.C.S.A. § 8301, and the decisional law interpreting the Act.

73.   Plaintiff, Shawn McLaughlin, Administrator of the Estate of E.M., deceased, claims damages for the pecuniary loss suffered by reason of the death of E.M., including but not limited to, damages for all medical expenses, funeral and burial expenses, and the costs of estate administration necessitated by the reason of the injuries which caused the death of E.M.

74.   Plaintiff, Shawn McLaughlin, Administrator of the Estate of E.M., deceased, claims damages for the loss of maintenance, support, comfort, care, society, and/or other losses as specifically recognized under the Wrongful Death Act

15

and its Pennsylvania case law progeny, including <u>Rettger v. UPMC Shadyside</u>, 2010 PA Super 41, P32, 991 A.2d 915, 933 (Pa. Super. 2010), including profound psychological and emotional loss, which he would have received from the decedent had her death not occurred.

**WHEREFORE**, Plaintiff, Shawn McLaughlin, as Administrator of the Estate of E.M., seeks all damages allowed under the laws of the Commonwealth of Pennsylvania and United States District Court for the Middle District of Pennsylvania, in an amount in excess of $75,000.

<u>**COUNT II**</u>

<u>**SURVIVAL ACTION**</u>

<u>**SHAWN MCLAUGHLIN, AS ADMINISTRATOR OF THE ESTATE OF E.M. v. AMAZON.COM, INC. AND AMAZON.COM SERVICES, LLC**</u>

75. The preceding paragraphs are incorporated herein by reference as though fully set forth.

76. Plaintiff Shawn McLaughlin, individually and as Administrator of the Estate of E.M. brings this action on behalf of the Estate of E.M. under and by virtue of the Survival Act, 42 Pa. C.S.A. § 8302 and the applicable Rules of Civil Procedure and decisional law interpreting this Act.

77. As a result of the negligent acts and omissions of Defendant, as described more fully herein, Plaintiff's Decedent, E.M., suffered catastrophic,

permanent and fatal injuries and death resulting in the entitlement to damages by the Estate of E.M. under the Survival Act.

78.    Plaintiff, Shawn McLaughlin, as Administrator of the Estate of E.M., deceased, claims the full measure of damages recoverable under and by virtue of the Survival Act and the decisional law interpreting the Act.

79.    On behalf of the Estate of E.M., Plaintiff claims damages for all economic losses to the Estate as specifically recognized under the Survival Act and its Pennsylvania case law progeny, including the Decedent's total estimated future earning capacity, less personal maintenance costs.

80.    On behalf of the Decedent's estate, Plaintiff claims damages for the Decedent's physical discomfort, pain and suffering, loss of enjoyment of life and life's pleasures, and all other damages and losses recoverable specifically under the Survival Act and its Pennsylvania case law progeny interpreting the Act.

**WHEREFORE**, Plaintiff, Shawn McLaughlin, as Administrator of the Estate of E.M., seeks all damages allowed under the laws of the Commonwealth of Pennsylvania and United States District Court for the Middle District of Pennsylvania, including compensatory and punitive damages, in an amount in excess of $75,000.

## COUNT III

## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

## SHAWN MCLAUGHLIN, INDIVIDUALLY, AS ADMINISTRATOR OF THE ESTATE OF E.M., A MINOR V. AMAZON.COM, INC. AND AMAZON.COM SERVICES, LLC

81.    The preceding paragraphs are incorporated herein as though fully set forth below.

82.    Amazon contracted for the design of the Play Pen to be sold exclusively by Amazon such that the Play Pen is an Amazon product.

83.    Amazon promoted, marketed, distributed and sold the subject Play Pen, expecting that it would reach consumers in the condition in which it was manufactured and sold, and knowing, or with reason to know, that it would be used without inspection for defects of any danger to Plaintiff's Decedent.

84.    The subject Play Pen reached the McLaughlins' home without substantial change in the condition in which Amazon sold it.

85.    At the time of the Incident in which E.M., a minor was tragically killed, the Play Pen was being used as it was intended.

86.    Amazon failed to provide adequate warnings regarding the use of the subject Play Pen causing it to be unreasonably dangerous to the intended user at the it left Amazon's possession.

18

87. The subject Play Pen was provided to the McLaughlins with a dangerous condition making it unreasonably dangerous, defective and unsafe for its intended use.

88. Amazon, as a merchant of the subject Play Pen, knew or should have known that the Play Pen was dangerous, defective and unsafe for its intended use.

89. Despite its knowledge of the dangers associated with the use of the Play Pen, Amazon promoted, distributed, marketed, and/or sold the product without adequate information, directions, and/or data.

90. Amazon knew or should have known that consumers, including the McLaughlins, would foreseeably suffer injury as a result of its failures.

91. Amazon failed to provide any warnings of possible defects or dangerous conditions with the Play Pen.

92. As a result of the above-stated acts and omissions, Plaintiff's Decedent suffered such harm as has been previously stated herein.

**WHEREFORE,** Plaintiff, Shawn McLaughlin, as Administrator of the Estate of E.M., seeks all damages allowed under the laws of the Commonwealth of Pennsylvania and United States District Court for the Middle District of Pennsylvania, including compensatory and punitive damages, in an amount in excess of $75,000.

## COUNT IV

## STRICT PRODUCTS LIABLITY – DESIGN DEFECT

## SHAWN MCLAUGHLIN, INDIVIDUALLY, AS ADMINISTRATOR OF THE ESTATE OF E.M., A MINOR V. AMAZON.COM, INC. AND AMAZON.COM SERVICES, LLC

93.    The preceding paragraphs are incorporated herein as though fully set forth below.

94.    As the distributor, retailer, and/or contract manufacturer of the Play Pen, Amazon is liable for design defects found based on the character of the product.

95.    As the distributor and/or retailer of the Play Pen, Amazon is responsible for the products that it places in the stream of commerce.

96.    The subject Play Pen was defectively designed, causing it to be unreasonably dangerous at the time it left the possession of Amazon.

97.    The unreasonable dangers posed by the Play Pen were unknowable to the ordinary consumer.

98.    Failure of the Play Pen to be properly designed and equipped with safety padding caused the tragic death of E.M.

99.    The actions and/or inactions of Amazon render them strictly liable in the following ways:

      a.  Marketing, promoting, distributing, supplying, and/or selling the defective Play Pen;

b. Marketing, promoting, distributing, supplying, and/or selling the unsafe and unreasonably dangerous Play Pen;

c. Marking, promoting, distributing, supplying, and/or selling the Play Pen without all necessary safety features to protect the user;

d. Marketing, promoting, distributing, supplying, and/or selling the Play Pen without adequate warnings or instructions;

e. Marketing, promoting, distributing, supplying, and/or selling the Play Pen with a counterfeit SGS Certification;

f. Marketing, promoting, distributing, supplying, and/or selling the Play Pen in a manner that permitted users to believe that the Play Pen was safe for children;

g. Failing to properly and adequately test the Play Pen after its design and assembly to ensure that it was fit to place in the stream of commerce;

h. Failing to ensure that consumers were adequately and properly advised of the dangers of the Play Pen;

i. Failing to ensure that consumers were adequately and properly advised of safe use of the Play Pen to avoid serious injuries and/or death;

j. Failing to ensure that the Play Pen had adequate padding on all areas accessible by the user;

k. Failing to ensure that the Play Pen was adequately manufactured to prevent scissoring, shearing, or pinching in violation of Section 5.6.1 of ASTM F406-19;

l. Failing to ensure that warning labels were permanently affixed to the Play Pen in violation of Section 5.11.1 of ASTM F406-19;

m. Failing to ensure that the top rails of the Play Pen did not disengage or fold in violation of Section 7.3.1 of ASTM F406-19;

21

n.  Failing to ensure that the top rail assembly did not disengage from the central hinge in violation of Section 7.3.3. of ASTM F406-19;

o.  Failing to ensure that the top rail covering material was of adequate thickness in violation of Section 7.5 of ASTM F406-19;

p.  Failing to prevent rail attachment failure in violation of Section 7.11.2 of ASTM F406-19; and

q.  Failing to take necessary precautions to eliminate the risk of strangulation and/or asphyxiation while a child was in the Play Pen.

100.  The potential for serious and fatal injury caused by the Play Pen significantly outweighs the burden or cost of taking additional safety precautions.

101.  Had a proper hazard analysis been conducted, the deficiencies in the Play Pen would have been blaringly apparent.

102.  At all relevant times hereto, alternative designs for the subject Play Pen were available to Amazon.

103.  The alternative designs were practical and feasible and would have reduced or eliminated the foreseeable risk of harm to Plaintiff's Decedent.

104.  Due to the unreasonably dangerous and defective condition allowed to exist within the Play Pen, Amazon breached common law product liability duties and is liable to Plaintiff pursuant to Restatement (Second) of Torts § 402A.

105.  As a result of the above-stated acts and omissions, Plaintiff's Decedent suffered such harm as has been previously stated herein.

**WHEREFORE,** Plaintiff, Shawn McLaughlin, as Administrator of the Estate of E.M., seeks all damages allowed under the laws of the Commonwealth of Pennsylvania and United States District Court for the Middle District of Pennsylvania, including compensatory and punitive damages, in an amount in excess of $75,000.

## COUNT V

## BREACH OF EXPRESS AND IMPLIED WARRANTY

## SHAWN MCLAUGHLIN, INDIVIDUALLY, AS ADMINISTRATOR OF THE ESTATE OF E.M., A MINOR V. AMAZON.COM, INC. AND AMAZON.COM SERVICES, LLC

106.   The preceding paragraphs are incorporated herein as though fully set forth below.

107.   Amazon is a merchant that deals in merchandise of the kind sold in this case (YOBEST Play Pen) and/or holds themselves out as having knowledge or skill particular to the Play Pen involved in this case.

108.   In connection with its business activities described herein, Amazon made both express and implied warranties with regard to the Play Pen, warranting that the product was safe, fit for its intended use and for Plaintiff's particular purpose, of merchantable quality and that the Play Pen was not defective.

109.   Amazon was aware that Plaintiff was relying on it to provide a product for consumer purposes, thereby impliedly warranting that the goods that

Amazon marketed, sold, distributed or otherwise brought into the stream of commerce, including the Play Pen, would in fact be safe and suitable for Plaintiff's intended purpose.

110. In reliance on Amazon's skill and judgment, and the implied warranties of fitness for that purpose, Plaintiff utilized the Play Pen in its intended manner.

111. The warranties provided by Amazon were inaccurate, misleading and false.

112. The Play Pen was unsafe, unfit for its intended use and for Plaintiff's particular purpose, not of merchantable quality, and otherwise defective.

113. As a direct and proximate result of Amazon's breach of express and implied warranties of merchantability and fitness for a particular purpose, Plaintiff's Decedent suffered such harm as has been previously stated herein.

**WHEREFORE,** Plaintiff, Shawn McLaughlin, as Administrator of the Estate of E.M., seeks all damages allowed under the laws of the Commonwealth of Pennsylvania and United States District Court for the Middle District of Pennsylvania, including compensatory and punitive damages, in an amount in excess of $75,000.

24

## COUNT VI

## NEGLIGENCE/RECKLESSNESS

## SHAWN MCLAUGHLIN, INDIVIDUALLY, AS ADMINISTRATOR OF THE ESTATE OF E.M., A MINOR V. AMAZON.COM, INC. AND AMAZON.COM SERVICES, LLC

114. The preceding paragraphs are incorporated herein as though fully set forth below.

115. The negligence, carelessness, and/or recklessness of Amazon, consisted of, but is not limited to the following:

a. Marketing, promoting, distributing, supplying, and/or selling the defective Play Pen;

b. Marketing, promoting, distributing, supplying, and/or selling the unsafe and unreasonably dangerous Play Pen;

c. Marking, promoting, distributing, supplying, and/or selling the Play Pen without all necessary safety features to protect the user;

d. Marketing, promoting, distributing, supplying, and/or selling the Play Pen without adequate warnings or instructions;

e. Marketing, promoting, distributing, supplying, and/or selling the Play Pen with a counterfeit SGS Certification;

f. Marketing, promoting, distributing, supplying, and/or selling the Play Pen in a manner that permitted users to believe that the Play Pen was safe for children;

g. Failing to properly and adequately test the Play Pen after its design and assembly to ensure that it was fit to place in the stream of commerce;

h.  Failing to ensure that consumers were adequately and properly advised of the dangers of the Play Pen;

i.  Failing to ensure that consumers were adequately and properly advised of safe use of the Play Pen to avoid serious injuries and/or death;

j.  Failing to ensure that the Play Pen had adequate padding on all areas accessible by the user;

k.  Failing to ensure that the Play Pen was adequately manufactured to prevent scissoring, shearing, or pinching in violation of Section 5.6.1 of ASTM F406-19;

l.  Failing to ensure that warning labels were permanently affixed to the Play Pen in violation of Section 5.11.1 of ASTM F406-19;

m.  Failing to ensure that the top rails of the Play Pen did not disengage or fold in violation of Section 7.3.1 of ASTM F406-19;

n.  Failing to ensure that the top rail assembly did not disengage from the central hinge in violation of Section 7.3.3. of ASTM F406-19;

o.  Failing to ensure that the top rail covering material was of adequate thickness in violation of Section 7.5 of ASTM F406-19;

p.  Failing to prevent rail attachment failure in violation of Section 7.11.2 of ASTM F406-19; and

q.  Failing to take necessary precautions to eliminate the risk of strangulation and/or asphyxiation while a child was in the Play Pen.

116.  As a result of the above-stated acts and omissions, Plaintiff's

Decedent suffered such harm as has been previously stated herein.

**WHEREFORE,** Plaintiff, Shawn McLaughlin, as Administrator of the Estate

of E.M., seeks all damages allowed under the laws of the Commonwealth of

Pennsylvania and United States District Court for the Middle District of Pennsylvania, including compensatory and punitive damages, in an amount in excess of $75,000.

## COUNT VII

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### STEPHANIE MCLAUGHLIN V. AMAZON.COM, INC. AND AMAZON.COM SERVICES, LLC

117. The preceding paragraphs are incorporated herein as though fully set forth below.

118. Amazon owed a special duty to Stephanie McLaughlin as the natural parent and guardian of E.M., a minor.

119. As set forth above, Stephanie McLaughlin was present in her residence on May 19, 2021.

120. As a result, she witnessed E.M. hanging from the Play Pen which ultimately caused her death.

121. Specifically, Stephanie McLaughlin was located in the next room immediately next to where the fatal Incident occurred.

122. Stephanie McLaughlin suffered direct and immediate emotional shock and distress as a result of her contemporaneous and sensory observance of her daughter, E.M. hanging from the Play Pen.

123. The severe emotional distress endured by Stephanie McLaughlin as a result of his contemporaneous and sensory observance of the fatal Incident was a direct and foreseeable result of Amazon's negligence.

124. Due to the negligence of Amazon, Stephanie McLaughlin has been caused to suffer a direct emotional impact, including severe fear, anxiety, and emotional distress which has manifested itself psychologically, emotionally, and physically and will continue into the future.

125. As a result of the aforesaid emotional distress, Stephanie McLaughlin has sustained and will continue to sustain a loss of the everyday pleasures and enjoyments of life.

126. By virtue of the fact that Amazon could reasonably foresee that individuals in the position of Stephanie McLaughlin would suffer great fear, mental anxiety and emotional distress as a result of their negligence and willful misconduct in failing to design a safe Play Pen, Amazon's conduct is extreme and outrageous and displays a conscious disregard for the health and safety of others.

**WHEREFORE,** Plaintiff, Stephanie McLaughlin, seeks all damages allowed under the laws of the Commonwealth of Pennsylvania and United States District Court for the Middle District of Pennsylvania, including compensatory and punitive damages, in an amount in excess of $75,000.

## COUNT VIII

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

## SHAWN MCLAUGHLIN and STEPHANIE MCLAUGHLIN, as parents and natural guardians of G.M., a minor V. AMAZON.COM, INC. AND AMAZON.COM SERVICES, LLC

127.    The preceding paragraphs are incorporated herein as though fully set forth below.

128.    Amazon owed a special duty to G.M. as the minor sister of E.M.

129.    As set forth above, G.M. was present in her residence on May 19, 2021.

130.    As a result, she witnessed E.M. hanging from the Play Pen which ultimately caused her death.

131.    Specifically, G.M. was located in the kitchen, immediately next to where the fatal Incident occurred.

132.    G.M. suffered direct and immediate emotional shock and distress as a result of her contemporaneous and sensory observance of her sister, E.M. hanging from the Play Pen.

133.    The severe emotional distress endured by G.M. as a result of his contemporaneous and sensory observance of the fatal Incident was a direct and foreseeable result of Amazon's negligence.

134.   Due to the negligence of Amazon, G.M. has been caused to suffer a direct emotional impact, including severe fear, anxiety, and emotional distress which has manifested itself psychologically, emotionally, and physically and will continue into the future.

135.   As a result of the aforesaid emotional distress, G.M. has sustained and will continue to sustain a loss of the everyday pleasures and enjoyments of life.

136.   By virtue of the fact that Amazon could reasonably foresee that individuals in the position of G.M. would suffer great fear, mental anxiety and emotional distress as a result of their negligence and willful misconduct in failing to design a safe Play Pen, Amazon's conduct is extreme and outrageous and displays a conscious disregard for the health and safety of others.

**WHEREFORE,** Plaintiff, Shawn McLaughlin and Stephanie McLaughlin, as parents and natural guardians of G.M., a minor, seek all damages allowed under the laws of the Commonwealth of Pennsylvania and United States District Court for the Middle District of Pennsylvania, including compensatory and punitive damages, in an amount in excess of $75,000.

## COUNT IX

## NEGLIGENT MISREPRESENTATION

## SHAWN MCLAUGHLIN, INDIVIDUALLY, AS ADMINISTRATOR OF THE ESTATE OF E.M., A MINOR V. AMAZON.COM, INC. AND AMAZON.COM SERVICES, LLC

137.    The preceding paragraphs are incorporated herein as though fully set forth below.

138.    Amazon marketed and labeled the Play Pen in a manner that publicly misrepresented its quality and fitness.

139.    The misrepresentation included, but was not limited to, statements that the product was safe for children, safe for its intended use, and that the Play Pen was free from defects.

140.    Amazon knew or should have known that its labels, advertisements, product descriptions, and other promotional materials made to the consumer, including the Plaintiffs, were wholly false and misleading.

141.    Amazon made these misrepresentations in connection with the design, manufacture, and sale of the Play Pen.

142.    Amazon intended that the consumer, including Plaintiffs, would rely on its false and misleading misrepresentations, and knew that consumers such as the Plaintiffs were unaware that its representations pertaining to the Play Pen were false.

143.    Plaintiffs reasonably relied on these misrepresentations when purchasing and utilizing the Play Pen.

144.    The misrepresentations set forth violated Restatement (Second) of Torts § 402B, which has been adopted by the Commonwealth of Pennsylvania.

145.   As a direct and proximate result of Plaintiffs' reasonable reliance on the misrepresentations of Amazon, Plaintiff's Decedent was tragically killed.

**WHEREFORE,** Plaintiff, Stephanie McLaughlin, seeks all damages allowed under the laws of the Commonwealth of Pennsylvania and United States District Court for the Middle District of Pennsylvania, including compensatory and punitive damages, in an amount in excess of $75,000.

## COUNT X

## EQUITABLE RELIEF

## ALL PLAINTIFFS v. AMAZON.COM, INC. AND AMAZON.COM SERVICES, LLC

146.   The preceding paragraphs are incorporated herein as though fully set forth below.

147.   Amazon was on notice that safety defects in the YOBEST Play Pen increased the risk of harm to consumers purchasing the product for use by young infants and toddlers, and consciously chose to ignore that risk.

148.   The management and corporate officers employed by Amazon knew that defects in the YOBEST Play Pen increased the risk of harm to innocent third parties, including Plaintiffs, and consciously chose to do nothing.

149.   Amazon consciously chose to market, promote, distribute, supply, and/or sell the YOBEST Play Pen anyway.

150.    As a result, Plaintiffs were catastrophically and fatally injured as a result of Amazon knowingly placing the YOBEST Play Pen in the stream of commerce for consumers to purchase nationwide.

**WHEREFORE** Plaintiffs, hereby seek equitable relief against Amazon.com, Inc. in the form of a companywide policy banning the marketing, promoting, distributing, supplying, or sale of the YOBEST Play Pen.

Respectfully submitted:

**FELLERMAN & CIARIMBOLI LAW, P.C.**

BY:    _____

Edward J. Ciarimboli, Esquire
Brian C. Corcoran, Esquire
Job T. Stepanski, Esquire
Fellerman & Ciarimboli Law, P.C.
183 Market Street, Suite 200
Kingston, PA 18704
570-718-1444
*Counsel for Plaintiffs*

Date: May 19, 2023