# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN MCLAUGHLIN individually,** | : | No. 3:23cv839 |
| **and as Administrator of the Estate** | : | |
| **of E.M., a Minor; STEPHANIE** | : | (Judge Munley) |
| **MCLAUGHLIN; SHAWN** | : | |
| **MCLAUGHLIN as Parent and Natural** | : | |
| **Guardian of G.M., a Minor;** | : | |
| **STEPHANIE MCLAUGHLIN,** | : | |
| **as Parent and Natural Guardian** | : | |
| **of G.M., a Minor,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **AMAZON.COM, INC.; AMAZON.COM** | : | |
| **SERVICES, LLC,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Plaintiffs Shawn McLaughlin and Stephanie McLaughlin (collectively the "McLaughlins") assert claims in this product liability matter against Defendants Amazon.Com, Inc. and Amazon.Com Services, LLC (collectively the "Amazon Defendants"). Per plaintiffs, the Amazon Defendants marketed and sold an unsafe playpen that caused the death of their one-year-old daughter.

Before the court is a motion filed by the Amazon Defendants to dismiss components of the plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The parties have briefed their respective positions and the matter is ripe for a decision.

## Background

This product liability case involves the death of the McLaughlins' baby, allegedly caused by a defective YOBEST playpen.  In March 2021, Stephanie McLaughlin purchased the playpen through the YOBEST marketplace on Amazon as a birthday gift for her daughter, E.M.[1] (Doc. 1, Compl. ¶¶ 37, 38). Stephanie assembled the playpen after it arrived at her residence without an instruction manual, as none was provided in the package. (Id. ¶ ¶ 39, 40). Instead, Stephanie relied on instructional videos embedded on the Amazon website. (Id. ¶ 41).  According to plaintiffs, these videos did not provide step-by-step directions but merely depicted an individual assembling the playpen. (Id. ¶ 42).

Stephanie had to play the instructional videos repeatedly during assembly to ensure that the correct pieces were used. (Id. ¶ 43).  She also had to continually pause the videos as she did so. (Id.)  Once assembled, the McLaughlins placed the playpen in their living room for E.M.'s use while Stephanie worked. (Id. ¶ 44).  Stephanie had a clear line of sight to the playpen from her home office. (Id. ¶ 45).

---

[1] These background facts are derived from plaintiffs' complaint.  At this stage of the proceedings, the court must accept all factual allegations as true.  <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted).  The court makes no determination, however, as to the ultimate veracity of these assertions.

As alleged here, E.M. died due to mechanical asphyxia. (Id. ¶ 54).  The one-year-old's mother and sister discovered her hanging from the top center joint of the playpen on May 19, 2021. (Id. ¶¶ 46, 51).  That morning, Stephanie placed E.M. in the playpen before she logged onto her work computer nearby. (Id. ¶ 47). E.M.'s sister also set up her school computer in the McLaughlins' kitchen. (Id. ¶ 49).  Both locations offered a direct view of E.M. in the playpen. (Id. ¶¶ 47, 49). At or about twelve noon, E.M. was found unconscious when mother and sister went to check on her. (Id. ¶ 51).  Plaintiffs have brought this action seeking to hold the Amazon Defendants liable and recover damages due to E.M.'s death.

Plaintiffs allege that the Amazon Defendants exhibited a conscious disregard for consumer health and safety by allowing the unsafe and defective playpen to enter the stream of commerce. (Id. ¶ 55).  According to plaintiffs, the Amazon Defendants purport that the playpen passed all SGS testing. (Id. ¶ 60). SGS provides professional testing, inspection, and certification of product safety worldwide. (Id. ¶ 61).  Nonetheless, plaintiffs contend that the SGS certification marketed with the playpen was counterfeit. (Id. ¶ 62).  The McLaughlins further assert that the Amazon Defendants knowingly marketed and sold the playpen with a counterfeit SGS certification. (Id. ¶ 63).  Moreover, plaintiffs allege that the Amazon Defendants knowingly promoted and sold the playpen without a

children's product certificate ("CPC") that certifies compliance with applicable children's product safety rules. (Id. ¶ 64).

As alleged, the Amazon Defendants are engaged in electronic commerce and derive substantial revenue through third party vendors such as YOBEST. (Id. ¶ 10).  A Chinese manufacturer, Xiamen Chaole Yueqi Industry and Trade Co., Ltd., ("XCY"), allegedly participated in the design, assembly, manufacture, and distribution of the playpen. (Id. ¶ 11).  According to the McLaughlins, the Amazon Defendants acquired exclusive rights over the playpen through an agreement, arrangement, or business relationship with XCY. (Id. ¶ 15).  Plaintiffs contend that the Amazon Defendants marketed, promoted, sold, supplied, and distributed the playpen to consumers in North America. (Id. ¶ 13).  They assert that the playpen was designed and manufactured exclusively for the Amazon Defendants. (Id. ¶ 17).

Plaintiffs further allege that the Amazon Defendants make no effort to verify whether their vendors are reputable, in good standing, or to offer non-defective products. (Id. ¶ 18).  The Amazon Defendants allegedly collect revenue from every sale of the playpen. (Id. ¶ 20).  Moreover, plaintiffs aver that the Amazon Defendants assume sole responsibility for the playpen, including its replacement and related refunds for improper, lost, or damaged shipments. (Id. ¶ 22).

4

Plaintiffs also allege that defendants provide express guarantees and warranties as to the playpen's descriptions listed on their online platform. (Id. ¶ 24). Additionally, the Amazon Defendants allegedly retain sole control over whether a product such as the playpen remains listed on their platform after receiving information concerning safety issues through customer ratings, reviews, and complaints. (Id. ¶ 25). In support of this allegation, plaintiffs inserted screen shots of negative reviews related to the playpen in their complaint.[2] (Id. at ECF p. 6).

According to plaintiffs, the Amazon Defendants are the *de facto* manufacturers of the playpen due to their collective actions and control concerning the product. Such actions include assigning an Amazon Standard Identification Number ("ASIN") for each playpen sold on their web platform, retaining exclusive rights to remove any playpen listing from their platform for any reason, and providing warranties on the playpen. (Id. ¶¶ 26-29).

---

[2] Under the law, courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a Rule 12(b)(6) motion. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). A court may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Id. (citations omitted). Furthermore, where a document is integral to or explicitly relied upon in the complaint, it may be considered without converting a motion to dismiss for failure to state a claim into one for summary judgment under Rule 56. Doe v. Princeton Univ., 30 F.4th 335, 343 (3d Cir. 2022) (citations and internal quotation marks omitted).

Furthermore, plaintiffs assert that the Amazon Defendants' Securities and Exchange filings reflect defendants' recognition of the possibility of facing product liability claims involving products they manufacture and sell on their online platform. (Id. ¶ 30).

Based upon the above allegations, the plaintiffs' complaint sets forth several claims against the Amazon Defendants.[3]  Those claims are as follows:

- Count I – Wrongful death under the Pennsylvania Wrongful Death Act, 42 PA. CONS. STAT. § 8301, (id. ¶¶ 69–74);

- Count II – Survival action pursuant to the Pennsylvania Survival Act, 42 PA. CONS. STAT. § 8302, (id. ¶¶ 75–80);

- Count III – Strict products liability for failure to warn, (id. ¶¶ 81–92);

- Count IV – Strict products liability for design defect, (id. ¶¶ 93–105);

- Count V – Breach of express and implied warranty, (id. ¶¶ 106–113);

- Count VI – Negligence and recklessness, (id. ¶¶ 114–116);

- Count VII – Negligent infliction of emotional distress, (id. ¶¶ 117–126);

---

[3] All Counts are directed against the Amazon Defendants. Certain claims are brought by Shawn McLaughlin as administrator of the estate of E.M. (Counts I, II, III, IV, V, VI, IX), others by Stephanie McLaughlin in her individual capacity (Count VII), others by Shawn and Stephanie as parents and natural guardians of G.M., a minor (Count VIII), and some by all the plaintiffs (Count X).  For ease of disposition, the court will refer to plaintiffs collectively regardless of the specific count under discussion in this memorandum.

- <u>Count VIII</u> – Negligent infliction of emotional distress, (<u>id.</u> ¶¶ 127–136);

- <u>Count IX</u> – Negligent misrepresentation, (<u>id.</u> ¶¶ 137–145); and

- <u>Count X</u> – Equitable relief, (<u>id.</u> ¶¶ 146–150).

The Amazon Defendants responded to the McLaughlins' complaint by filing a partial motion to dismiss. (Doc. 32).  In their motion and brief in support, the Amazon Defendants move to dismiss Counts V, VI, IX, and X of the complaint as well as plaintiffs' request for punitive damages. (<u>Id.</u> ¶ 4).  In support of the dismissal, the Amazon Defendants argue that:

1) Count V fails to adequately plead a breach of express and implied warranty claims;

2) Count VI fails to adequately set forth claims of negligence and recklessness;

3) Count IX fails since plaintiffs' claim of negligent misrepresentation is not founded upon an actionable duty between the parties, and even if it were, plaintiffs have not identified an actionable misrepresentation by the Amazon Defendants;

4) Count X which advances a claim for equitable relief is unnecessary given that plaintiffs have an adequate legal remedy; and

5) Plaintiffs' request for punitive damages should be dismissed as they have failed to plead sufficient facts to support recovery of such damages. (Doc. 35, Br. in Supp. at 1-2).

## Jurisdiction

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. As alleged, there is complete diversity of citizenship between the parties and the amount in controversy exceeds the jurisdictional limit. (Doc. 1, Compl. ¶ 34). Plaintiffs are residents of Pennsylvania. (Id. ¶¶ 1-6). The Amazon Defendants are entities organized and existing under the laws of the State of Delaware with a principal place of business located in Seattle, Washington. (Id. ¶¶ 7, 8). See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states[.]").

As a federal court sitting in diversity, the court applies state substantive law. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)). Pennsylvania law applies in this case.

## Legal Standard

The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. To survive a motion to dismiss, "a complaint

8

must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Doe, 30 F.4th at 341–42 (quoting FED. R. CIV. P. 8(a)(2)).  This means a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process.  The first step involves identifying the elements of each claim. Oldham v. Pennsylvania State Univ., 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted).  The second step involves reviewing the operative pleading and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. See Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted). And third, the court evaluates the plausibility of the remaining allegations. Id.

In evaluating plausibility of the plaintiff's allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. Id. (citations omitted).

**Analysis**

### 1. Breach of Express Warranty

Amazon Defendants move to dismiss the plaintiffs' claim for breach of express warranty in Count V. They argue that the McLaughlins fail to identify any individualized promise or affirmative statement attributable to the defendants. (Doc. 35, Br. in Supp. at 8-9).

Under Pennsylvania law, "the seller must expressly communicate the terms of the warranty to the buyer in such a manner that the buyer understands those terms and accepts them." Goodman v. PPG Indus., 849 A.2d 1239, 1243 (Pa. Super. Ct. 2004). Express warranties are created in the following ways:

> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

13 Pa. Cons. Stat. § 2313(a).  Additionally, the seller need not "use formal words such as 'warrant' or 'guarantee' " nor need the seller "have a specific intention to make a warranty" for the creation of an express warranty. See Id. § 2313(b).

A promise becomes the basis of the bargain if the plaintiff can prove "that she read, heard, saw or knew of the advertisement containing the affirmation of fact or promise." Starks v. Coloplast Corp., 2014 WL 617130, at *6 (E.D. Pa. Feb. 18, 2014) (quoting Parkinson v. Guidant Corp., 315 F. Supp. 2d 741, 752 (W.D. Pa. 2004)).  "Absent a demonstration that a promise or affirmative statement was made, how or by whom the promise was made, or what was in fact promised, a claim for breach of express warranty is not sufficiently plead." Gross v. Stryker Corp., 858 F.Supp.2d 466, 501-02 (W.D. Pa. Mar. 14, 2012).

Plaintiffs allege that they relied on the Amazon Defendants' representations that the playpen was safe when they selected it and used it. (Doc. 1, Compl. ¶¶ 108-13).  Per plaintiffs, the Amazon Defendants expressly guaranteed and warranted that the playpen's description on their online platform was accurate. (Id. ¶ 24).  The McLaughlins refer to the defendants' online platform which describes the playpen as a "Sturdy Safety Play Yard with Soft Breathable Mesh." (Doc. 37, Br. in Opp. at 11, 12).  Plaintiffs included a screen shot showing that

description in their brief in opposition.[4] (Id.)  Plaintiffs also inserted a screen shot of the playpen's SGS certificate in the complaint which indicates that it had passed all SGS testing. (Doc. 1, Compl. at ECF p. 13).  However, as mentioned previously, plaintiffs assert that the Amazon Defendants knowingly marketed the playpen with a counterfeit SGS certification. (Id. ¶ 63).  These allegations, collectively, are sufficient to state a claim for breach of express warranty.  Hence, plaintiffs have plausibly asserted that the Amazon Defendants made affirmative statements, specifically that the playpen was safe for use by children and had been professionally tested, and that such representations formed part of the basis of the bargain.

Amazon Defendants also argue that plaintiffs' express warranty allegations only identify representations made by the playpen's manufacturer (i.e., XCY) or third-party seller, not by the defendants themselves. (Doc. 38, Reply Br. at 6-7). In Pennsylvania, the breach of express warranty requires that the affirmation of fact or promise to the buyer be made by a seller. See 13 PA. CON. STAT. § 2313. A seller is defined as "a person who sells or contracts to sell goods." Id. § 2103(a).  Here, plaintiffs allege that "Amazon purports that the Play Pen passed

---

[4] The court may consider the screen shot the McLaughlins inserted in their brief in opposition without converting the motion to dismiss into one for summary judgment as it is integral to their claim that the Amazon Defendants represented the playpen as safe.  Moreover, plaintiffs allege that they explicitly relied on the Amazon Defendants' description of the playpen as safe in their complaint. (Doc. 1, Compl. ¶¶ 59, 139, 143). See Doe, 30 F.4th at 343.

all SGS Testing" and that "Amazon knowingly markets, promotes, distributes, supplies and sells the YOBEST Play Pen line with a counterfeit SGS Certification." (Doc. 1, Compl. ¶¶ 60, 63).  Considered collectively, these allegations are sufficient to establish that the defendants made the representations in question in their capacity as sellers of the playpen.  At this posture, the court must construe the complaint in the light most favorable to the plaintiffs and draw all reasonable inferences in their favor.  Accordingly, the Amazon Defendants' motion to dismiss the breach of express warranty claim in Count V will be denied.

### 2. Breach of Implied Warranty

The Amazon Defendants also move to dismiss plaintiffs' claim for breach of implied warranty in Count V of the complaint.  Specifically, the Amazon Defendants seek to dismiss plaintiffs' claim for breach of implied warranty of fitness for a particular purpose. (Doc. 35, Br. in Supp. at 9-10).  Plaintiffs concede that they failed to properly allege that claim.  (Doc. 37, Br. in Opp. at 13).  Hence, the Amazon Defendants' motion to dismiss Count V will be granted in part insofar as that count asserts a claim for breach of implied warranty of fitness for a particular purpose.

In their opposition, however, the McLaughlins also contend that they have properly pled a claim for breach of implied warranty of merchantability. (Id.)  That

claim will proceed since the Amazon Defendants do not oppose and did not address that portion of Count V in either their brief in support or reply brief.

### 3. Recklessness and Negligence

Amazon Defendants also move to dismiss plaintiffs' claims of recklessness and negligence in Count VI of the complaint.

#### a. Recklessness

Starting with recklessness, the Amazon Defendants argue that Count VI should be dismissed to the extent it states a separate cause of action for recklessness. (Doc. 35, Br. in Supp. at 11). The Court agrees with the Amazon Defendants on this point because "[t]here is no cause of action for recklessness under Pennsylvania law." M.U. v. Downingtown High Sch. E., 103 F. Supp. 3d 612, 629 (E.D. Pa. 2015) (citing Archibald v. Kemble, 971 A.2d 513, 519 (Pa. Super. Ct. 2009)). This is true even where a defendant acted in a reckless manner since "the cause of action remains [as one] sounding in negligence." Id. (quoting Archibald, 971 A.2d at 519)).

Thus, the Amazon Defendants' motion to dismiss Count VI of the complaint will be granted only to the extent that it may be read to assert a separate cause of action for recklessness. Pennsylvania law does not recognize recklessness as a standalone cause of action. Dismissal will be with prejudice as amendment would be futile. This ruling does not, however, serve to strike any allegations of

14

reckless conduct throughout the complaint.  For that reason, the court will separately consider punitive damages below. [5]

### b. Negligence

Turning to the allegations of negligence, the Amazon Defendants contend that Count VI fails to advance the basic elements of a negligence claim. (Doc. 35, Br. in Supp. at 11).  Upon review of the complaint, the court disagrees with defendants.

Under Pennsylvania law, to state a claim for negligence, a plaintiff must allege that: (1) defendant owed a duty to the plaintiff; (2) defendant breached that duty; (3) there is a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) there is actual loss suffered by the plaintiff. Schemberg v. Smicherko, 85 A.3d 1071, 1073–74 (Pa. Super. Ct. 2014) (citation omitted).  In a negligence-based products liability action "[a] defendant must be identified as the manufacturer, distributor, or seller of the offending product before the injuries suffered by the plaintiff may be found to be proximately

---

[5] Dismissal of recklessness as a separate cause of action does not preclude plaintiffs from pursuing punitive damages. The complaint alleges that the Amazon Defendants acted with conscious disregard for the health and safety of consumers, including plaintiffs, by allowing an unsafe and defective playpen to enter the stream of commerce. (See Doc. 1, Compl. ¶¶ 55, 56, 63).  Such allegations, if proven, may support an award of punitive damages. See Hutchison ex rel. Hutchison v. Luddy, 870 A.2d 766, 772 (Pa. 2005) (Nothing prevents a plaintiff "in a case sounding in negligence from undertaking the additional burden of attempting to prove, as a matter of damages, that the defendant's conduct not only was negligent but that the conduct was also outrageous, and warrants a response in the form of punitive damages.").

caused by some negligent act or omission of the defendant." <u>Mellon v. Barre-Nat'l Drug Co.</u>, 636 A.2d 187, 191 (Pa. Super. Ct. 1993).

To determine whether the Amazon Defendants owed a duty of care to the plaintiffs, the court must weigh the following five factors:

> (1) the relationship between the parties; (2) the social utility of the defendant's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the defendant; and (5) the overall public interest in the proposed solution. [<u>Althaus ex rel. Althaus v. Cohen</u>, 756 A.2d 1166, 1169 (Pa. 2000)]. No one of these five factors is dispositive. Rather, a duty will be found to exist where the balance of these factors weighs in favor of placing such a burden on a defendant.

<u>Phillips v. Cricket Lighters</u>, 841 A.2d 1000 (Pa. 2003) (citation modified) (quoting <u>Althaus</u>, 756 A.2d at 1169)).

Plaintiffs' complaint contains a heading stating that the Amazon Defendants are the *de facto* manufacturers of the playpen. (Doc. 1, Compl. ECF p. 3). Plaintiffs allege that the Amazon Defendants are considered *de facto* manufacturers because of their agreement, arrangement, or business relationship with XCY granting the defendants exclusive rights over the playpen. (<u>Id.</u> ¶ 15).  Additionally, plaintiffs have sufficiently alleged that the Amazon Defendants are sellers of the playpen.

As for the duty of care, plaintiffs allege that they purchased the playpen through the YOBEST marketplace on Amazon. (<u>Id.</u> ¶ 37).  Plaintiffs claim that the

Amazon Defendants assume sole responsibility for the playpen, maintain exclusive control over the product's listing on their platform, and receive all related communication. (Id. ¶¶ 16, 19, 22, 25, 26).  Considering all reasonable inferences from these allegations in the light most favorable to the plaintiffs, there was a relationship between plaintiffs, as the purchasers of the playpen, and the Amazon Defendants as the *de facto* manufacturers and sellers of this product. With respect to the social utility of the defendants' conduct, namely, the manufacture and sale of the playpen, it is evident that a product such as the playpen at issue, if safe and properly certified for children's use, would serve a valuable utility in society.  Regarding the nature of the risk imposed and the foreseeability of the harm incurred, plaintiffs' complaint sufficiently alleges that placing children in a defective and unsafe playpen poses substantial risk of injury and results in foreseeable harm.  Balancing these factors, the Amazon Defendants owed plaintiffs a duty of care when the facts are viewed in the light most favorable to the plaintiffs.

Turning to the remaining prongs of the negligence test, namely whether the Amazon Defendants breached their duty, whether that breach caused the injuries in question, and whether there were damages, these can be examined much more expeditiously than the duty prong.  Regarding the breach of duty, plaintiffs allege that the Amazon Defendants negligently placed the defective and unsafe

playpen into the stream of commerce, marketed it, and sold it with a counterfeit SGS certification. (<u>Id.</u> ¶¶ 63, 64, 65, 66).  Such allegations sufficiently set forth a breach of defendants' duty of care.  As for damages, plaintiffs have sufficiently alleged that the defective playpen caused the death of their daughter. Consequently, the McLaughlins have sufficiently pleaded their negligence claim against the Amazon Defendants.  As a result, the motion to dismiss plaintiffs' claim of negligence in Count VI of the complaint will be denied.

### 4. Negligent Misrepresentation

The Amazon Defendants next argue that plaintiffs' negligent misrepresentation claim in Count IX fails for two reasons. (Doc. 35, Br. in Supp. at 12).  First, defendants contend that plaintiffs' claim is not supported by a duty of the Amazon Defendants under Pennsylvania law. (<u>Id.</u>)  Second, the Amazon Defendants contend that the negligent misrepresentation claim is not pled with requisite particularity. (<u>Id.</u>)

To state a negligent misrepresentation claim under Pennsylvania law, a plaintiff must allege: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and [ ] (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." <u>Bortz v. Noon</u>, 729 A.2d 555, 561 (Pa. 1999). "[L]ike any action in negligence, there must be an

existence of a duty owed by one party to another." Id. (citing Gibbs v. Ernst, 647 A.2d 882, 890 (Pa. 1994)).

As a preliminary matter, the Amazon Defendants argue that they did not owe plaintiffs a duty under Pennsylvania law.  To support their argument, defendants assert that Section 552 of the Restatement (Second) of Torts ("Restatement") applies in this case. (Doc. 35, Br. in Supp. at 12).  Plaintiffs counter that Section 311 is the applicable provision as their alleged injury involves physical harm as opposed to a pecuniary loss. Plaintiffs' argument is more persuasive.[6]  According to Section 311:

> (1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results
> (a) to the other, or
> (b) to such third persons as the actor should expect to be put in peril by the action taken.
> (2) Such negligence may consist of failure to exercise reasonable care
> (a) in ascertaining the accuracy of the information, or
> (b) in the manner in which it is communicated.

---

[6] The Restatement (Second) of Torts distinguishes between two types of negligent misrepresentation based on the type of injury alleged. Section 552 applies when the injury consists of a pecuniary loss, whereas Section 311 governs when the injury results in physical harm. See Restatement (Second) of Torts § 552 cmt. a ("[T]he scope of [liability under § 552] is not determined by the rules that govern liability for ... negligent misrepresentation that results in physical harm."). Pennsylvania state law recognizes both categories of negligent misrepresentation. See, e.g., English v. Lehigh Cty. Auth., 428 A.2d 1343, 1356 (Pa. Super. Ct. 1981) (quoting Restatement (Second) of Torts § 311); see also Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270, 286 (Pa. 2005) (relying on Section 552).

Restatement (Second) of Torts § 311. Liability under Section 311 is "somewhat broader" than that of Section 552. Id. § 311 cmt. a.

Plaintiffs have adequately alleged that the Amazon Defendants owed them a duty under Section 311 of the Restatement.  A duty arises when one "in the course of an activity which is in furtherance of his own interests, undertakes to give information to another, and knows or should realize that the safety of the person of others may depend upon the accuracy of the information." Id. § 311 cmt. b.  Plaintiffs' allegations that the Amazon Defendants knowingly marketed and sold the playpen despite its lack of proper certification under the children's product safety rules, coupled with the assertions that the defendants collected revenue from every sale of a playpen, support a finding that the defendants owed plaintiffs a duty under Section 311 of the Restatement. (Doc. 1, Compl. ¶¶ 20, 60, 63).

Plaintiffs must also demonstrate that: (1) the defendants made a false statement about a material fact; (2) they knew or should have known that the statement was false; (3) they intended for the plaintiffs to rely on it; and (4) the plaintiffs reasonably relied on the statement to their detriment, resulting in injury. Bortz, 729 A.2d at 561.  Here, plaintiffs assert that the safety of the playpen constitutes a material fact which was misrepresented by the defendants. (Doc. 1, Compl. ¶¶ 139, 141).  Additionally, the McLaughlins have plausibly alleged that

20

the Amazon Defendants knew or should have known that their representations of the playpen's safety on the online platform would be relied upon by consumers such as plaintiffs, thereby placing children similar to E.M. in peril. (Id. ¶¶ 140, 142). Moreover, the inclusion of the SGS certificate in the playpen's description further supports the inference that the Amazon Defendants intended consumers to believe that the playpen had been certified after legitimate safety testing for children. (Id. ¶¶ 61, 63, 65, 66). According to plaintiffs' allegations, they reasonably relied on the Amazon Defendants' product description stating that the playpen was safe. (Id. ¶¶ 59, 60, 143). That reliance, per plaintiffs, led to E.M.'s tragic death. (Id. ¶ 145). As far as whether reliance on a misrepresentation is reasonable, that is usually a question for the jury. See Tran v. Metro. Life Ins. Co., 408 F.3d 130, 135 (3d Cir. 2005) ("We stress, as have the Pennsylvania courts, that the issue of whether reliance on a representation is reasonable (or justifiable) is generally a question of fact that should be presented to the jury."). Plaintiffs have thus sufficiently pled all the elements of a negligent misrepresentation claim. The Amazon Defendants' motion to dismiss Count IX of the complaint will be denied.

**5. Equitable Relief**

The Amazon Defendants additionally challenge the McLaughlins' claim in Count X for equitable relief seeking a ban on "the marketing, promoting,

distributing, supplying or sale" of the playpen. (See Doc. 1, Compl. ¶ 150).  Per

defendants, plaintiffs' claim for equitable relief amounts to a request for a

permanent injunction against them. (Doc. 35, Br. in Supp. at 15).  As the Amazon

Defendants contend, a request for such relief is inappropriate where plaintiffs'

other claims demonstrate that an adequate remedy at law, i.e., monetary

damages, is available. (Id.)  The defendants further contend that the plaintiffs'

claim for equitable relief has not been properly pled. (Id.)

For a court to grant a permanent injunction, a plaintiff must show: "(1) that it

has suffered an irreparable injury; (2) that remedies available at law, such as

monetary damages, are inadequate to compensate for that injury; (3) that,

considering the balance of hardships between the plaintiff and defendant, a

remedy in equity is warranted; and (4) that the public interest would not be

disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547

U.S. 388, 391 (2006).

Before a court considers whether a plaintiff is entitled to a permanent

injunction, the plaintiff must succeed on the merits of his claims. Ciba-Geigy

Corp. v. Bolar Pharm. Co., 747 F.2d 844, 850 (3d Cir. 1984) ("In deciding

whether a permanent injunction should be issued, the court must determine if the

plaintiff has actually succeeded on the merits (i.e. met its burden of proof. If so,

the court must then consider the appropriate remedy.")).  If a plaintiff prevails on

the merits, then the court must consider whether "the moving party will be irreparably injured by the denial of injunctive relief," whether "the granting of the permanent injunction will result in even greater harm to the defendant," and whether "the injunction would be in the public interest." Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001).

"As a matter entrusted to a court's equitable discretion, an injunction 'does not follow from success on the merits as a matter of course.' " TD Bank N.A. v. Hill, 928 F.3d 259, 278 (3d Cir. 2019) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 32 (2008)).  "[T]he inability to show irreparable harm—or, relatedly, that a legal remedy would be inadequate—defeats a request for injunctive relief." Id.  However, "the availability of some legal remedy does not mean such a remedy is adequate." TD Bank N.A., 928 F.3d at 283. The legal remedy must be both adequate and complete. Hill v. Nationwide Ins. Co., 570 A.2d 574, 576 (Pa. Super. Ct. 1990). Equitable relief is therefore available "despite the existence of a legal remedy when, from the nature and complications of a given case, justice can best be reached by means of equity's flexible machinery." Id. (citation omitted).

Plaintiffs contend that they seek equitable relief against the Amazon Defendants in the form of a companywide policy banning the marketing and sale of the playpen. (Doc. 1, Compl. ¶ 150).  Specifically, plaintiffs seek to remove the

23

playpen from the Amazon Defendants' platform, which is merely one of the million products defendants sell online. (Doc. 37, Br. in Opp. at 19). Moreover, the playpen is alleged to be harmful and unsuitable for children. (Id.) Hence, as asserted, the public would not be disserved by the removal of allegedly dangerous products unfit for children from the stream of commerce. The determination of whether plaintiffs have in fact suffered irreparable injury is more appropriately reserved for another day. Even if further details may ultimately be required to assess the totality of the circumstances, the highly fact-intensive nature of this inquiry makes dismissal at this stage unwarranted. Under these circumstances, plaintiffs have sufficiently pleaded their claim for equitable relief. Therefore, the Amazon Defendants' motion to dismiss Count X will be denied at this early stage of the proceedings.

### 6. Punitive Damages

The Amazon Defendants also move to dismiss plaintiffs' punitive damages request in the *ad damnum* clauses of the complaint. (Doc. 35, Br. in Supp. at 6-7). According to the Amazon Defendants, the McLaughlins fail to plead sufficient facts to warrant recovery of punitive damages. (Id.)

Under Pennsylvania law, the award of punitive damages is warranted "for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Hutchison, 870 A.2d at 770 (quoting Feld v.

Merriam, 485 A.2d 742, 747 (Pa. 1984)).  As is evident from the term itself, "punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." Id.  Namely, a defendant's action or inaction must be intentional, reckless or malicious. Id. at 771.  Hence, "a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." Id.  at 772.

As plaintiffs allege in the complaint, the Amazon Defendants knew or should have known that the playpen was unsafe, defective, and unfit to be placed in the stream of commerce. (Doc. 1, Compl. ¶ 65).  Additionally, per plaintiffs, the Amazon Defendants knowingly marketed and sold the playpen with a counterfeit SGS certification. (Id. ¶¶ 61-63).  Due to the Amazon Defendants' alleged actions or inactions, a one-year-old baby lost her life.  At this stage of the litigation, the McLaughlins have sets forth enough facts to permit their request for punitive damages to move forward based on the Amazon Defendants' alleged actions or inactions and state of mind.  Therefore, defendants' motion to dismiss plaintiffs' punitive damages request is denied.

**Conclusion**

For the reasons set forth above, the Amazon Defendants' motion to dismiss plaintiffs' complaint will be granted in part and denied in part. The motion to dismiss will be granted as to portions of Counts V and VI of the complaint. Plaintiffs' claim for breach of implied warranty of fitness for a particular purpose in Count V will be dismissed with prejudice. Plaintiffs' claim for recklessness as a separate cause of action in Count VI of the complaint will also be dismissed with prejudice. The motion will be otherwise denied. An appropriate order follows.

Date: 9/30/25

JUDGE JULIA K. MUNLEY
United States District Court